JOHN SAUTKULIS, Plaintiff, v. FRANCES CONKLIN et al., Defendants.

WILLIAM MATZOK et al., Landlords, v. JOHN SAUTKULIS, Tenant.

Supreme Court, Special Term, Nassau County, September 9, 1955.

*Nathan Dorfman* for plaintiff and tenant.

*Stephen W. O'Leary* and *James C. Barry* for Frances Conklin, defendant.

*Paul J. Leach* for William Matzok and another, defendants and landlords.

COLDEN, J. This is an action for specific performance. The plaintiff alleges that in violation of an option contained in his lease, the defendant Frances Conklin conveyed to the defendants Matzok, certain real property at Glen Cove, New York. The defendant Conklin as a separate and distinct defense, and by way of cross complaint against her codefendants, asserts that her contract to sell, and the actual sale to the defendants Matzok, are entirely void because of her advanced years, confused state, and lack of understanding; that the transaction as to her was improvident, overreaching and unconscionable. Her prayer is for judgment of rescission and reconveyance. A counterclaim of the defendants Matzok against the plaintiff sounding in trespass, was dismissed by consent on the trial for failure of proof. With this suit in equity, there has been consolidated a summary proceeding instituted in the First District Court of Nassau County, based upon nonpayment of rent by the plaintiff as tenant to the defendants Matzok as landlords. This dispossess proceeding, however, requires no independent consideration. The obligation of the plaintiff to pay the applicable rent hinges on his success or failure in establishing his right to specific performance.

Prior to 1951, Frances Conklin was the owner of the parcel of real estate in the city of Glen Cove described by metes and bounds in paragraph " First " of the complaint. It was known on the city tax map as lot 23 in block A, section 21. On January 2, 1951, she owned no other property in the city of Glen Cove. On that date, she entered into a lease with the plaintiff for the presumable term of five years from that date. The lease covered " that piece or parcel of land adjoining the tributary of the main Creek in the City of Glen Cove, used in connection with the rowboat business, owned by the party of the first part, together with the workshop, houseboat, 29 rowboats, anchors, oars and other incidentals used in connection with said business, all belonging to the party of the first part with the appurtenances ". The rental for the first year was $1,600, payable half on execution of the lease and half on July 1, 1951.

Two clauses embodying the antithesis of good draftsmanship were typed into the printed form lease: '' The parties hereto shall agree as to the amount of the yearly rent and the amount of payments at the end of each year for the remaining four years of this lease.

'' The party of the second part shall have an option to purchase the land and business on the same terms and conditions as any purchaser offers to the party of the first part. In the event the party of the second part fails to exercise his option and the party of the first part sells the land to any other party, this lease shall be terminated and the party of the second part shall surrender the land and business and the rent paid in advance if any adjusted.''

On the same date, and apparently as part of the same enterprise, one Doris Uhlendorf, the owner of lot 58 abutting lot 23 on its northern line leased to Mrs. Conklin for five years from January 2, 1951, '' that piece or parcel of land fronting on the Creek and the tributary thereto, now being used by the party of the second part in connection with her rowboat business with the appurtenances ''. This five-year term was unconditional. The annual rental was $400, payable in quarterly installments. This leasehold was turned over by the defendant Conklin to the plaintiff, although apparently without formal assignment, and he thereafter paid the rent directly to Doris Uhlendorf.

On and after January 2, 1951, lot 23, according to the plaintiff's own testimony, was being beneficially used by three interests:

1. The plaintiff used the easterly portion, which he delineated as area B, by drawing an approximate line on the map. This contained one building, stated to be his workshop. Other parts of area B were used for the parking of cars, the storage of boats in wintertime, and it also provided, by means of a road, the only land access to lot 58. Here the actual rowboat rental business was located upon the land leased from Uhlendorf.

2. The defendant, William Matzok, leased from Mrs. Conklin, the westerly portion operated by him as a boat yard, containing four small structures. This was designated by the plaintiff as area M.

3. Frances Conklin retained a center strip, continuing to live, for the time being, in the two-room house thereon located. It was later leased by her to the Matzoks.

On June 13, 1952, a contract was entered into for the sale of lot 23 by the defendant Conklin to the defendants Matzok. The purchase price was $7,000, payable in monthly installments of

not less than $46.20. It was also provided in said contract "It is mutually understood and agreed that this contract is subject to an existing lease between the parties with regard to a dwelling house on the premises known as 128 Shore Road, Glen Cove, New York; and also subject to an existing tenancy between the Seller and John Sautkulis for certain fishing station premises, as well as to a lease between the Seller, and her late husband, Joseph W. Conklin, and the purchaser, William Matzok, dated June 27, 1950 with regard to premises used as a boat yard, and that any income to the Seller under the above leases and tenancies is to remain the property and income of the Seller and to continue as long as the leases are in effect and the rents paid by the respective tenants, or until payment by the Purchasers is made in full, or this agreement otherwise terminated, whereupon all rights of the Seller under said leases shall end and the Purchasers shall then be entitled to all of the Seller's rights thereunder as owner in fee simple." The Matzoks then being tenants in possession of the dwelling house, which was known as 128 Shore Road, Glen Cove, New York, proceeded at considerable expense to make substantial improvements therein.

On February 8, 1954, the plaintiff purchased from Mrs. Conklin for $500, the twenty-nine rowboats referred to in his lease. However, the memorandum, signed by both parties, evidencing the sale, provided, " This transaction does not alter the terms of the lease I have with Mrs. Conklin, and our business will be carried on as usual."

On June 15, 1954, an agreement modifying the contract of sale, previously entered into between the defendant Frances Conklin and the defendants William Matzok and Helen Matzok, was signed at the home of Mrs. Conklin, who was then residing with her granddaughter in New Jersey. The modification, which incidentally was witnessed by the said granddaughter, Mrs. Tumioli, provided for the payment of the consideration to the extent of $5,500, by the giving of a bond and purchase-money mortgage, payable with interest of 5% in monthly payments of $103.80 until fully paid.

Title closed on August 11, 1954, at which time, the defendant Conklin was represented by counsel, John J. McCann, Esq. of the New Jersey Bar. A subsequent communication from the purchasers' attorney to the plaintiff, notifying him of the sale, and the assignment of his lease, precipitated this lawsuit, in which the plaintiff claims the property on the same terms as those afforded the defendants Matzok.

At the outset, it is to be noted that the plaintiff's alleged five-year lease is, in fact, only a lease for one year, that being the period for which a definite rent was provided. The provision that the parties should agree, at the end of each year, as to the charge for the ensuing annual period, is but an agreement to agree, and under authorities too numerous to require citation, *nudum pactum*. Nevertheless, the parties continued their relationship from year to year, without changing the rental of $1,600 per annum, at least until the sale to the Matzoks. This effected a renewal of the lease for successive one-year periods on identical terms and conditions, and these included the option, such as it was, and for what it was worth. (*Masset* v. *Ruh*, 235 N. Y. 462.)

Moreover, in the opinion of the court, the parties specifically intended the plaintiff, for the period of five years from January 2, 1951, to have the option of first refusal of the land and business, on the same terms as offered by any prospective purchaser. Implicit in this commitment is the obligation of the defendant Conklin not to offer the land and business for sale separately. The court agrees with the plaintiff's contention that the vendees Matzok were put on notice as to the rights of the plaintiff, who was in possession of a portion of the premises purchased. They also had actual notice of the existence of the option, and in fact, their contract of purchase was specifically made subject to the plaintiff's lease. Nevertheless, the plaintiff's option must fail of enforcement, for uncertainty and indefiniteness. The court finds that there has been no proper identification of the parcel of land purported to be subject to the option. The lease refers to a piece or parcel of land adjoining the tributary of the main creek in the city of Glen Cove, used in connection with the rowboat business, together with the workshop. The principal activity of the rowboat business was conducted, as has been previously noted, on lot 58, which was not owned by the defendant Conklin at all, but only leased by her from Doris Uhlendorf.

Giving the plaintiff the most favorable inferences that can be drawn from the proof, he would only be entitled, under the terms of his option, to purchase the rowboat business, and some unidentified portion of lot 23, on which some collateral activities of the rowboat business were conducted. The plaintiff in this action seeks conveyance to him of the entire parcel, lot 23, although by his own testimony he had only leased a certain easterly portion thereof, which was evidenced on the map, not by the technically qualified evidence of a civil engineer or surveyor, but by the plaintiff's own crudely drawn line of

demarcation, which made no attempt to fix exact directions or distances. This court of equity cannot make a new contract for the parties, nor can it undertake to survey and clearly define the boundaries of the land to which plaintiff claims himself entitled. The plaintiff's option, in its existing form, must therefore be characterized as unenforcible. A similar situation was before the Court of Appeals in the case of *Wadnick* v. *Mace* (191 N. Y. 1, 6-7), and the following excerpts from the decision in that case are of the greatest significance:

" While I think that this contract lacks the mutuality of remedy which has been so often pronounced essential to the right to a specific performance, there are other reasons which amply support the action of the trial court in denying that relief to the plaintiff. The uncontradicted evidence leaves no doubt that the minds of the parties never met in respect to the specific location and boundaries of the property to be conveyed. * * *

" These facts, I think, make it sufficiently plain that the real agreement between the parties to this instrument was either so vague and indefinite in essential respects, or would be so inequitable in its effect, if construed in accordance with the contention of the vendee, that it cannot be specifically enforced. Under the stipulation which the defendants were compelled to give in order to bring the case here for review we can do nothing in the event of an affirmance except to direct a judgment in accordance with the prayer of the complaint. That prayer is for a judgment ' directing the defendant to perform said agreement and provide plaintiff with a deed containing such a description as will definitely determine the north and south line of said property.' What such a judgment would be it is impossible to conjecture. We cannot know whether it would include or exclude the disputed gore on the west or whether it would locate the northerly line south or north of Allerton avenue. So far as the evidence shows anything on the subject it indicates that the vendee would be dissatisfied if the gore were excluded; and the Appellate Division has unmistakably intimated that it would be unjust to the vendor if it carried the north line beyond Allerton avenue, while if that line were not carried so far the vendee would not receive his twenty acres. These difficulties show how unsuitable and inappropriate is the remedy of specific performance in such a case as this and we are fully satisfied that the trial court was right in refusing to award such relief."

The cases cited by the plaintiff on this point are inapposite. In both *Pelletreau* v. *Brennan* (113 App. Div. 806) and *Waring*

v. *Ayres* (40 N. Y. 357), the description of the property was not a precise one, but enough was set forth, so that in each instance, the parcel was readily identified, and its exact location presented no problem.

With respect to the cross complaint of the defendant, Frances Conklin, the court finds that she has failed to sustain the burden of establishing the material allegations thereof, by a fair preponderance of the credible evidence. It is not believed that Frances Conklin was any more incompetent at the time of the execution of the contract of sale on June 13, 1952, than she was at the time of the execution of the plaintiff's lease on January 2, 1951, or when she sold the twenty-nine rowboats to the plaintiff on February 8, 1954, and no one of the parties challenges the validity of any one of these transactions. In any event, she was represented by independent counsel of her own choosing at the closing of title on August 11, 1954, and a consummation of the sale under these circumstances constituted a ratification of the contract, and a waiver of any defects thereof appurtenant.

It is also to be noted that no expert medical testimony was offered on behalf of the defendant Conklin with respect to her lack of understanding or incompetency, at the time of the occurrence of these events. Nor does the court believe that there was any improvidence, or overreaching in the sale of lot 23 by defendant Conklin to the defendants Matzok. Expert testimony submitted in the latter's behalf indicated, and the court finds, that the price paid represented the fair and reasonable market value of the premises as of the time of the making of the contract, and prior to the substantial improvement and rehabilitation thereof by Mr. and Mrs. Matzok. No expert testimony as to the value of the real property was submitted by any other party.

By reason of all of the foregoing, it is the determination of the court that the plaintiff's complaint and the defendant Frances Conklin's cross complaint should be dismissed. The decision in the dispossess proceeding will be in favor of the landlords Matzok and against the tenant Sautkulis. There will be no costs to any party.

The foregoing constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.

Settle judgment and final order on notice.